UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Alexie Portz, et al.,

                    Plaintiffs,                    Court File No. 16-cv-1115 (JRT/LIB)

    v.                                             **ORDER AND
                                                   REPORT AND RECOMMENDATION**

St. Cloud State University, et al.

                    Defendants.

This matter came before the undersigned United States Magistrate Judge pursuant to a general referral, [Docket No. 2], made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(B), and upon Plaintiffs' Motion to Amend Scheduling Order to Permit Service of Second Amended Class Action Complaint, [Docket No. 89], and Plaintiffs' Motion to Strike Rule 68 Offer of Judgment, [Docket No. 97]. A hearing on the Motions was held on March 30, 2017, and the matters were thereafter taken under advisement. ([Docket No. 109]).

For the reasons set forth below, the Court **DENIES** Plaintiffs' Motion to Amend Scheduling Order to Permit Service of Second Amended Class Action Complaint, [Docket No. 89], and recommends that Plaintiffs' Motion to Strike Rule 68 Offer of Judgment, [Docket No. 97], be **GRANTED**.[1]

---

[1] United States Magistrate Judges within the District of Minnesota have on occasion issued report and recommendations (rather than orders) regarding motions to strike Rule 68 offers of judgment. See, Lamberson v. Fin. Crimes Servs., LLC, No. 11-cv-98 (RHK/JJG), 2011 WL 1990450, *1 (D. Minn. April 13, 2011), Report and Recommendation adopted 2011 WL 1990447 (D. Minn. May 23, 2011). Other United States Magistrate Judges within this District have issued orders on such motions to strike. See, Davis v. Gulf State Credit, L.L.C., No. 00-cv-798 (JRT/FLN), 2000 WL 33955880 (D. Minn. Nov. 22, 2000). This Court issues a Report and Recommendation in the present case because its ruling has the dispositive effect of eliminating the potential for later cost-shifting and thus potentially deprives Defendants of a procedural benefit.

## I.    BACKGROUND  AND STATEMENT OF FACTS

Title IX mandates, in relevant part:  "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. §1681(a). There are three general areas in which Title IX requires compliance:  (1) equal financial assistance based on athletic activity, or athletic scholarships; (2) equal participation opportunities; and (3) equal treatment, benefits, and opportunities with regard to equipment, supplies, travel, coaches, and other similar program areas. See,Title IX of the Education Amendments of 1972; a Policy Interpretation; Title IX and Intercollegiate Athletics, 44 Fed. Reg. 71413, 71414 (Dec. 11, 1979).

Defendant St. Cloud State University ("SCSU"), is a public university in St. Cloud, Minnesota, and it is a member of Defendant Minnesota State Colleges and Universities ("MNSCU"), collectively referred to hereinafter as "Defendants." (Prelim. Injunction Order, [Docket No. 38], 3). In 2015, SCSU's president asked its athletics director, Heather Weems, to create a strategy for the athletics department to address declines in revenue and enrollment. (Id. at 4). Weems' solution involved elimination of SCSU's men's and women's tennis teams, its women's Nordic skiing team, its men's cross-country running team, and its men's track team. (Id.). The plan also involved reducing the number of participants on certain men's and women's teams and increasing the number of participants on other women's teams. (Id.). On March 2, 2016, SCSU publicly announced its intent to carry out the plan. (Id. at 7).

The original Plaintiffs in this case were five athletes on the SCSU women's tennis team, all of whom received partial athletic and academic scholarships: Fernanda Quintino dos Santos,

Marilia Roque Diversi, Jill Kedrowski, Abigail Kantor, and Alexie Portz ("the original Plaintiffs"). (Id. at 7-10).

The original Plaintiffs filed their initial Complaint on April 28, 2016, seeking to represent a class of similarly situated females, namely "SCSU's current, prospective, and future female students who want to participate in varsity women's tennis at SCSU or who want to participate in varsity sports not offered or eliminated by SCSU." (Compl., [Docket No. 1], 1-2). In Count I of the Complaint, they alleged that SCSU provided a proportionally greater opportunity for male students to participate in varsity intercollegiate athletics than it provided to female students, in violation of Title IX. (Id. at 2, 14-15, 18-23). Count II alleged that SCSU's failure to provide female and male student athletes with the same benefits and opportunities was discrimination against the female students, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. (Id. at 2, 23-25).

The original Plaintiffs requested certification of the proposed class of plaintiffs. (Id. at 25). They also sought injunctive relief, restraining Defendants from eliminating any women's sports teams and requiring Defendants to provide equal opportunities for its female and male students to participate in varsity intercollegiate athletics. (Id. at 16-18). In addition, the original Plaintiffs requested declaratory relief stating that (1) Defendants have engaged in and continue to engage in a pattern and practice of discrimination against female SCSU students on the basis of sex in violation of Title IX and (2) Defendants have engaged in unlawful sex discrimination in violation of the Equal Protection Clause, as enforced by 42 U.S.C. § 1983. (Id. at 22, 25). The original Plaintiffs also asked for compensatory damages, any other available monetary relief, and attorney's fees, costs, expenses, and interest. (Id. at 18-19, 26).

On July 25, 2016, Chief Judge John R. granted the original Plaintiffs' subsequent Motion for Preliminary Injunction on July 25, 2016, and enjoined Defendants from:

a. Eliminating SCSU's interscholastic women's tennis team;
b. Involuntarily terminating the employment of the coaches of SCSU's interscholastic women's tennis team;
c. Reducing support for SCSU's interscholastic women's tennis team; and
d. Restricting or denying SCSU's interscholastic women's tennis team's access to facilities, coaching, training, or competitive opportunities.

(Order Granting Prelim. Injunction, [Docket No. 38], 27). Pursuant to a Stipulation later filed by the parties, the Court amended the Preliminary Injunction to also include the SCSU women's Nordic skiing team. (Order, [Docket No. 43]). On September 26, 2016, the parties filed a Stipulation to Amend the Verified Complaint to add as named plaintiffs members of the SCSU varsity women's Nordic skiing team. (Stipulation, [Docket No. 54], 1-2). On September 30, 2016, this Court granted leave to amend the verified complaint to add Maria Hauer, Haley Bock, Kaitlyn Babich, Anna Lindell, and Kiersten Rohde (now included in the collective "Plaintiffs"), all members of the SCSU women's Nordic skiing team, as named Plaintiffs, and to add claims on their behalf. (Order, [Docket No. 56]; First Amend. Compl., [Docket No. 57], 5-7). Plaintiffs filed the Amended Verified Class Action Complaint (hereinafter, "First Amended Complaint") on September 30, 2016. (First Amend. Compl., [Docket No. 57]).

On October 4, 2016, this Court entered the Rule 16 Pretrial Scheduling Order, which set, in relevant part, November 15, 2016, as the deadline for the filing of and completion of any hearings on motions which seek to amend the pleadings or add parties. (PT Sched. Order, [Docket No. 59], 2.)

Nevertheless, on November 15, 2016, Plaintiffs filed a Motion to Amend the Amended Verified Complaint and supporting documents. ([Docket Nos. 68-72]). That Motion was withdrawn as filed in error because it was missing attachments, and Plaintiffs re-filed their

4

Motion on November 16, 2016. (Motion to Amend, [Docket No. 74]). In their Proposed Second Amended Complaint, Plaintiffs sought to add two additional Title IX claims. (Proposed Sec. Amend. Compl., [Docket No. 74-1], 31-33). Proposed Count II was a claim based on a violation of Title IX's requirements regarding equal allocation of athletics-related financial assistance. (Id. at 31-33). Proposed Count III alleged a violation of Title IX's requirements for equal allocation of athletic treatment and benefits, "including, but not limited to, equipment, supplies, uniforms, locker rooms, scheduling for competitions, transportation and accommodations for travel, per diem for travel, coaching," etc. (Id. at 33, 35-36). Plaintiffs alleged an unlawful, overall disparity between the expenses for women's teams and men's teams and an unlawful disparity in the quality of the facilities provided for men's and women's teams, in violation of Title IX. (Id. at 34). Plaintiffs asserted that there was good cause to allow such amendment because the additional claims were based upon information Plaintiffs did not receive from Defendants until certain responsive source documents were produced on October 31, 0216. (Mem. in Supp., [Docket No. 71], 9-10). Plaintiffs also stated that it was only after receipt of that additional information that Plaintiff's counsel concluded that there was a good-faith basis to bring the additional proposed Title IX claims, as required by Federal Rule of Civil Procedure 11. (Id. at 7).

On December 15, 2016, the Court held a hearing on the Motion, and thereafter, it took the Motion under advisement. (Order, [Docket No. 79], 1). On January 17, 2017, this Court issued its Order denying the Motion to Amend. (Id.). After noting that Plaintiffs had failed to timely file their Motion to Amend under the deadline established in the Pretrial Scheduling Order, this Court noted that Plaintiffs' counsel had "fail[ed] to specifically identify either in his written motion or oral argument which information in the October 31, 2016, discovery production was the new information that allowed counsel to now believe that he could bring the proposed

additional Title IX claims in good faith." (Id. at 17). This Court reviewed the Proposed Second Amended Complaint and found that each new factual allegation therein was either asserted on information and belief or was based upon information that could be found in documents available to Plaintiffs by at least May 2016. (Id. at 19). The Court also held that the additional information, as summarily described by counsel, "would not have been crucial to a reasonable attorney's decision on whether he or she could bring the claim in good faith and in accordance with the requirements of Rule 11. (Id.). Thus, the Court held that Plaintiffs' counsel's subjective belief that "prior to October 31, 2016, he did not have a Rule 11 compliant good-faith basis to bring the proposed additional Title IX claims" was not reasonable and could not "constitute the good cause required by Rule 16(b)(4) to amend the pretrial scheduling order (after the relevant deadline had already lapsed) and allow a second amendment of the First Amended Complaint." (Id. at 20). Accordingly, the Court denied the Motion to Amend the Amended Verified Complaint. (Id. at 21).

On January 31, 2017, Plaintiffs filed with the District Court an Objection to this Court's Order, arguing that the Order was clearly erroneous. (Objection, [Docket No. 80], 1). Defendants filed a Response, arguing that the Order was correct. (Response, [Docket No. 83]). As of the date of this Order and Report and Recommendation, the District Court has not yet ruled on the Objections.

Meanwhile, on January 19, 2017, Defendants served Plaintiffs with an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68. (James Dec., Exh. 1, [Docket No. 101], 3-5). The Offer stated:

> 1. To [named Plaintiffs and putative class representatives], Defendants offer to maintain SCSU's intercollegiate women's tennis and Nordic ski teams through the end of academic year 2019-20 and to at least maintain the current level of support and access to facilities, coaching, training and competitive opportunities

those teams and their players receive throughout that period. In addition, SCSU will allocate an additional $10,000.00 each to the tennis and ski teams during academic year 2017-18 that SCSU will use, in its sole discretion, for team-related expenses and/or improvements, such as those for equipment, competitions, and travel.

2.  To [named Plaintiffs] as individual Plaintiffs, Defendants offer $2[,]000.00 each.

3.  Defendants agree to pay costs accrued in this action to date. Reasonable attorney's fees are included as part of Defendants' offer. Defendants offer to allow the Court to determine these costs, including reasonable attorney's fees.

4.  Defendants' offer is conditioned on acceptance by all Plaintiffs and is made to fully and finally resolve all claims made or that could have been made against them in this action.

(Id. at 3-4). Plaintiffs did not accept the Offer. (Finnerty Dec., [Docket No. 107], 2).

On March 10, 2017, Plaintiffs filed their present Motion to Amend the Scheduling Order to Permit Service of Second Amended Class Action Complaint. (Motion to Amend, [Docket No. 89]). On March 16, 2017, Plaintiffs filed their present Motion to Strike Rule 68 Offer of Judgment. (Motion to Strike, [Docket No. 97]). Defendants filed a Memorandum in Opposition to the Motion to Amend on March 17, 2017, and a Response to the Motion to Strike Rule 68 Offer of Judgment on March 23, 2017. (Mem. in Opp., [Docket No. 104]; Response, [Docket No. 106]).

## II.    PLAINTIFFS' MOTION TO AMEND SCHEDULING ORDER TO PERMIT SERVICE OF SECOND AMENDED CLASS ACTION COMPLAINT, [Docket No. 89]

### A.  Standards of Review

Federal Rule of Civil Procedure 16(b)(4) states:  "A schedule may be modified only for good cause and with the judge's consent." Thus, amending a complaint outside of the time frame established in a district court's scheduling order "requires a showing of good cause." See, Harris v. FedEx Nat'l LTL, Inc., 760 F.3d 780, 786 (8th Cir. 2014). "'The primary measure of good

cause is the movant's diligence in attempting to meet the [scheduling] order's requirements . . . . Our cases reviewing Rule 16(b) rulings focus in the first instance (and usually solely) on the diligence of the party who sought modification of the order.'" Id. (quoting Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716-17 (8th Cir. 2008) (quotation omitted)).

Local Rule 7.1(j) states: "Except with the court's prior permission, a party must not file a motion to reconsider. A party must show compelling circumstances to obtain such permission." In addition, Local Rule 72.2(a) provides:

> When a pretrial matter not dispositive of a party's claim or defense is referred to and decided by a magistrate judge, a party may seek review of the magistrate judge's order on the matter as follows:
> (1) Objections. A party may file and serve objections to the order within 14 days after being served with a copy, unless the court sets a different deadline. A party may not assign as error a defect in the order not timely objected to.
> (2) Response. A party may respond to another party's objections within 14 days after being served with a copy.
> (3) Review by district judge. The district judge must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law. The district judge may also reconsider on his or her own motion any matter decided by the magistrate judge but not objected to.

### B.  Analysis

Plaintiffs seek to amend the operative Scheduling Order so that Plaintiffs may further amend their First Amended Complaint. (Motion to Amend, [Docket No. 89], 1). Specifically, Plaintiffs seek to bring "two additional Title IX claims against SCSU:  1) a claim alleging violation of Title IX's requirement for equal allocation of athletic-related financial assistance, and 2) for violation of Title IX's requirements for equal allocation of athletic treatment and benefits." (Mem. in Supp., [Docket No. 91], 2). As Plaintiffs admitted on the record at the March 30, 2017, Motions Hearing, these are precisely the claims Plaintiffs sought to add in their previously denied Motion to Amend, [Docket No. 74]. (March 30, 2017, Motions Hearing,

Digital Record, 10:05-10:07; <u>Compare</u>, November 2016 Proposed Sec. Amend. Compl., [Docket No. 74-1], 27-40, <u>with</u> March 2017 Proposed Sec. Amend. Compl., [Docket No. 92-1], 27-44).

Moreover, Plaintiffs devote part of their Memorandum in Support to arguing that by November 1, 2016, "none of the information the plaintiffs had—not even the EADA reports and the Affidavit of Heather Weems—supported an objective, good-faith belief that the claims they seek to add—an athletic financial assistance claim and an athletic treatment and benefits claim—were warranted." (Mem. in Supp., [Docket No. 91], 7-11). This is precisely the argument Plaintiffs made in their prior Motion to Amend, and is an argument this Court explicitly rejected in denying that Motion. (<u>See</u>, Order, [Docket 79], 20). Similarly, Plaintiffs now argue that they have additional information—discovered <u>after</u> the Motions Hearing on Plaintiffs' prior Motion to Amend—which justifies bringing the claims they wish to untimely add to their Complaint. (Mem. in Supp., [Docket No. 91], 2).

In its January 17, 2017, Order, this Court concluded that Plaintiffs' counsel had a good-faith basis by at least May 2016, upon which to timely assert the proposed additional Title IX claims. Information learned by Plaintiffs' counsel <u>after</u> the hearing on the first Motion to Amend cannot affect the soundness of this Court's ruling that Plaintiffs' counsel had a good-faith basis to bring the proposed additional claims <u>well</u> <u>before</u> that hearing. Thus, information learned after the Motions Hearing on Plaintiffs' first Motion to Amend does not provide a compelling reason for reconsideration of the Court's January 17, 2017, Order, as required by Rule 7.1(j), nor does it constitute the good cause required by Rule 16(b)(4) to justify modifying the Scheduling Order to allow amendment of Plaintiffs' First Amended Complaint, as Plaintiffs seek in their current Motion to Amend.

In addition, Plaintiffs have already sought review of this Court's ruling on their prior Motion to Amend pursuant to Local Rule 72.2, by filing objections to the Order. (Objection, [Docket No. 80]). There has not yet been a ruling on the Objections. Therefore, Plaintiffs' present Motion effectively asks this Court to provide relief on an issue which is simultaneously before the District Court. The procedure under Local Rule 72.2, however, leaves this Court unable to reconsider its own order when such order has been objected to, the objections have been responded to, and the matter is under review.[2]

Accordingly, Plaintiffs' Motion to Amend Scheduling Order to Permit Service of Second Amended Class Action Complaint, [Docket No. 89], is **denied**.

### III.    PLAINTIFFS' MOTION TO STRIKE RULE 68 OFFER OF JUDGMENT, [Docket No. 97]

#### A.  Standards of Review

Federal Rule of Civil Procedure 68 states:

**(a) Making an offer; Judgment on an Accepted Offer.** At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.
**(b) Unaccepted Offer.** An unaccepted offer is considered withdrawn, but it does not preclude a later offer. Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs.
. . . .
**(d) Paying Costs After an Unaccepted Offer.** If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

---

[2] Moreover, Local Rule 7.1(j) states: "Except with the court's prior permission, a party must not file a motion to reconsider. A party must show compelling circumstances to obtain such permission." Plaintiffs have not requested or received this Court's permission to file a motion to reconsider this Court's January 2017, Order. Even if Plaintiffs had done so, nothing in their current Memorandum undermines the analysis in that Order.

When Rule 68 Offers are made prior to a motion for class certification in a putative class-action suit, the Court must consider the special role of the putative class representative(s), who has "duties not typically borne by the ordinary plaintiff who is merely pursuing his own claim." Johnson v. U.S. Bank Nat'l Assoc., 276 F.R.D. 330, 332 (D. Minn. 2011). In this context, "the district court is also 'require[d] [to act as the guardian of the rights of class members] [] even if a class has not yet been certified.'" Id. (citations omitted).

### B. Analysis

Plaintiffs ask the Court to strike Defendants' Rule 68 Offer of Judgment because the Offer was made prior to Plaintiffs' opportunity to bring a motion to certify the class and the Offer creates an impermissible conflict between Plaintiffs' individual interests and their responsibilities as putative class representatives. (Mem. in Supp., [Docket No. 100], 2). Defendants oppose the Motion, arguing that it seeks an advisory opinion and that the Offer was consistent with the applicable Federal Rules of Civil Procedure. (Response, [Docket No. 106]).

Initially, the Court disagrees with Defendants' contention that this Motion improperly seeks an advisory opinion. (See, Id. at 5). Defendants accurately note that certain courts within this District have in the past held that motions to strike Rule 68 offers sought advisory opinions. (Id.). For example, in Bryant v. Bonded Accounts Services, No. 00-cv-1072 (RHK/JMM), 2000 WL 33955881, *4-5 (D. Minn. Aug. 2, 2000), United States Magistrate Judge Mason considered a motion to strike a pre-class-certification Rule 68 offer of judgment in which the plaintiff argued that the fee-shifting provision of Rule 68(d) put unfair pressure on him, as a putative class representative, to accept the Rule 68 offer made, thereby creating a conflict between the plaintiff's interests and those of the putative class. Magistrate Judge Mason stated:

The conflict counsel for Plaintiff seeks to resolve is a hypothetical one. Plaintiff himself has determined that he will not accept the settlement offer, but Defendant has not moved to recover costs from Plaintiff. Defendant has merely made a settlement offer. It is, of course, possible that a controversy over enforcement of the offer of judgment may arise at some point in the future. At this time, any opinion we would issue on the subject would be merely advisory. . . . .

The issue of whether a failure to accept an offer warrants imposition of costs under Rule 68 is more properly addressed, if it arises, when such a request for costs is made. At that time the court will have more information on the case and be better equipped to determine whether or not it is appropriate to assess costs.

Id. See, also, Davis v. Gulf State Credit, L.L.C., No. 00-cv-798 (JRT/FLN), 2000 WL 33955880, *1 (D. Minn. Nov. 22, 2000) (affirming order of Chief Magistrate Judge Noel denying the plaintiff's motion to strike the defendant's Rule 68 Offer of Judgment because the "plaintiff's conflict of interest is speculative at best" since the class had not yet been certified and the plaintiff had not yet filed a motion for class certification).

What Defendants in the present case do not acknowledge is that since the opinions they cite, at least one Minnesota federal District Court has found that motions to strike Rule 68 offers do not improperly seek advisory opinions. As Magistrate Judge Keyes stated in Johnson:

[T]he pre-certification offer of judgment has immediate adverse impact on Plaintiff. Each time Plaintiff pushes the litigation forward on behalf of the class, the cost-shifting risk to Plaintiff individually ratchets up, thus disincentivizing Plaintiff from acting in the best interest of the class. The putative class representative should not have to shoulder this ongoing conflict between his duties to vigorously pursue class certification and otherwise protect the interests of the class while running the risk that Defendant's costs will be shifted back to him. Thus, there is a current and meaningful legal dispute arising from the conflict of interests caused by the Rule 68 offer. The matter is therefore ripe for adjudication.

276 F.R.D. at 335. This Court finds Magistrate Judge Keyes' rationale more persuasive than the earlier cases which found that motions to strike Rule 68 offers sought advisory opinions. Therefore, the Court rejects Defendants' request to decline to address the merits of the motion.

CASE 0:16-cv-01115-JRT-LIB   Doc. 111   Filed 04/19/17   Page 13 of 18

Courts have stricken Rule 68 offers which were made prior to a motion for class certification in a putative class action lawsuit when those Rule 68 offers attempt to resolve the putative class representatives' individual claims without offering resolution of the class members' potential claims. See, e.g., Johnson, 276 F.R.D. at 332-34; Schroeder v. First Nat'l Collection Bureau, Inc., No. 10-4238 (RHK/FLN), 2011 WL 9374263, *1-2 (D. Minn. May 12, 2011); Lamberson v. Fin. Crimes Servs., LLC, No. 11-cv-98 (RHK/JJG), 2011 WL 1990450, *4 (D. Minn. April 13, 2011), Report and Recommendation adopted by 2011 WL 1990447 (D. Minn. May 23, 2011). Although the pre-class-certification timing of a Rule 68 Offer of Judgment is not a per se ground to strike the Offer, it is nevertheless an important factor to be taken into consideration. See, Johnson, 276 F.R.D. at 334 ("The purpose of Rule 68 might be served if Plaintiff had to weigh an offer from Defendant to settle the entire class claim against the chances of greater recovery for the class should the class action be certified and go to trial."); see, also, Johnson v. Midwest ATM, Inc., 881 F. Supp. 2d 1071, 1073-75 (D. Minn. 2012) (finding that a pre-certification Rule 68 Offer mooted the action where it offered individual and class-wide relief).

As noted above, when Rule 68 Offers are made prior to a motion for class certification in a putative class-action suit, the Court must consider the special role of the putative class representative(s), who has "duties not typically borne by the ordinary plaintiff who is merely pursuing his own claim." Johnson, 276 F.R.D. at 332. In this context, "the district court is also 'require[d] [to act as the guardian of the rights of class members] [] even if a class has not yet been certified.'" Id. (citations omitted). Accordingly, when a Rule 68 Offer is made that offers a favorable resolution of the putative class representatives' individual claims but does not offer class-wide relief, a conflict of interest may arise, because if the individual putative class

13

representatives accept the offer, "a federal court will normally dismiss the action as moot because the case-or-controversy requirement is no longer met and the interests of the class will thus be abandoned." Id. at 333.

Defendants in the present case argue that they offered class-wide relief in their Rule 68 Offer. (Response, [Docket No 106], 6-7). The Rule 68 Offer of Judgment in the present case included (1) keeping the women's tennis and Nordic ski teams through at least academic year 2019-20; (2) maintaining at least the current level of support and access to facilities, coaching, training and competitive opportunities for those teams and their players at least through academic year 2019-20; and (3) providing an addition $10,000 to both the women's tennis and Nordic ski teams during the 2017-18 academic year. (James Dec., Exh. 1, [Docket No. 101], 3-5). Defendants argue that these portions of the Rule 68 Offer demonstrate that they are not improperly attempting to "pick off" plaintiffs or otherwise thwart the sought class relief; they have made a class-wide offer. (Response, [Docket No. 106], 7). Therefore, according to Defendants, there is no conflict of interest that would justify striking the Offer. (Id. at 7-8).

The Court agrees that the cases in this District in which courts have stricken Rule 68 Offers of Judgment made pre-class-certification involved offers which did not include class-wide relief. See, Johnson, 276 F.R.D. at 332 (the Rule 68 "offer was restricted to Plaintiff Adam Johnson's single claim for statutory damages and did not address the class-action claim"); Lamberson, 2011 WL 1990450, at *1, *4 (stating that the Rule 68 offer "fully satisfies [the putative class representative's] individual claim" and ultimately striking the offer because of an "improper conflict of interest between a putative class representative and the putative class"); Schroeder, 2011 WL 9374263, at *1 (the Rule 68 "offer was specifically worded only to resolve

Plaintiff's individual claims" and was therefore an attempt to "pick off" a named Plaintiff before a ruling on class certification).

However, a closer look at the Defendants' Rule 68 Offer now at issue in the present case and the putative class asserted by Plaintiffs shows that Defendants' Offer was <u>not</u> an offer of relief to the entire class. Defendants offer relief only for the claims of putative class members who wish to participate in varsity women's tennis or varsity women's Nordic skiing at SCSU, including guaranteeing certain levels of support and access through the end of academic year 2019-20 and allocating additional monetary funds to the tennis and ski teams during academic year 2017-18. (James Dec., Exh. 1, [Docket No. 101], 3-4). But the putative class as it stands at this point[3] includes current enrollees and future enrollees who would remain at SCSU and participate in the women's varsity and Nordic ski teams beyond the academic years provided for in the Rule 68 Offer. Therefore, the future enrollees would not receive full relief from the Rule 68 Offer presently before the Court whereas the putative class representatives would receive full relief for the limited remainder of their academic and athletic careers at SCSU. This creates a conflict of interest between the putative class representatives and the putative class members.

In addition, the Rule 68 Offer does not address Plaintiffs' goal of broader Title IX parity. Instead, it only addresses Title IX remedies as would affect the currently named Plaintiffs. The First Amended Complaint requests, in part, injunctive relief "restraining Defendants from eliminating the women's varsity tennis and Nordic skiing program (or any varsity women's sports or women's athletic participation opportunities), and requiring Defendants to provide females with an equal opportunity to participate in varsity intercollegiate athletics by sponsoring additional women's varsity athletic opportunities based upon the interests and abilities of

---

[3] The Court wishes to make clear that it is not defining what the class <u>is</u> or will be; rather, the Court is defining only the putative class as set forth currently in the pleadings before it.

Defendants' present, prospective, and future students." ([Docket No. 57], 27-28). The Rule 68

Offer now at issue simply does not affect Title IX parity in sports outside of the women's tennis

and Nordic ski teams. (James Dec., Exh. 1, [Docket No. 101], 3-4).

When a defendant makes a Rule 68 Offer that would resolve only the putative class

representatives' individual claims, courts have viewed this as an attempt to preemptively thwart

the class action and generally reject such tactics by striking the Offer. As U.S. District Court

Judge Michael Davis has stated:

> [A]llowing defendants to avoid liability merely by winning the race to the
> courthouse and by proffering settlement offers that have the effect of denying all
> putative plaintiffs' claims even before scheduling orders are issued and plaintiffs
> have the applicable motion deadlines in front of them, would be bad policy and
> would effectively eviscerate the effectiveness of class actions in cases such as this
> one. It would also create an absurd situation in which plaintiffs' attorneys would
> need an endless supply of willing class representatives to file complaints identical
> to the class action complaints that would be dismissed as defendants buy off
> named representatives one by one. See, [Schaake v. Risk Management
> Alternatives, Inc., 203 F.R.D. 108, 110-11(S.D. N.Y. 2001)] (noting that if
> defendants are allowed to "hamstring" litigation by "buying off" plaintiffs,
> plaintiffs' attorneys will be forced to "scrounge[] for a class representative to keep
> their suits alive").

Jancik v. Cavalry Portfolio Servs., LLC, No. 6-cv-3104 (MJD/AJB), 2007 WL 1994026, *4 (D.

Minn. July 3, 2007).

Minnesota federal District Courts have also recognized the pressure that may be exerted

by the potential fee-shifting effect of a Rule 68 Offer made prior to class certification which

purports to resolve only the putative class representatives' individual claims. Rule 68(d) provides

that "[i]f the judgment finally obtained by the offeree is not more favorable than the offer, the

offeree must pay the costs incurred after the offer." See, Johnson, 276 F.R.D. at 334.

Accordingly, if the putative class representatives reject a Rule 68 Offer and continue to represent

the class, they "now run[] the risk that, in the end, [they] would incur the cost-shifting liability

imposed by Rule 68. In other words, [they are] compelled to 'weigh [their] own interest in avoiding personal liability for costs under Rule 68 against the potential recovery of the class.'" Id. at 335. Although Rule 68 is meant to "'prompt [] both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits,'" a Rule 68 Offer made in a putative class-action suit prior to a motion to certify the class requires the putative class representatives to also weigh the likelihood of success of their class-certification motion. Id. Such consideration is contrary to the purpose of Rule 68. Id.

As explained above, Defendants' Rule 68 Offer creates a conflict between the putative class representatives and the putative class members by failing to offer class-wide relief and it requires Plaintiffs to factor into any decision on whether to accept the Rule 68 Offer their personal interests as they may be affected by an assessment of the likelihood of success on their motion to certify the class. Both of these reasons have persuaded District Courts within this District to strike Rule 68 Offers of Judgment in other cases, and this Court finds that such reasoning remains sound. See, e.g., Johnson, 276 F.R.D. at 334-35.

Accordingly, because Defendants' Rule 68 Offer of Judgment was served prior to the resolution of any motion for class certification and because the Offer does not offer relief to all members of the putative class, this Court recommends **granting** Plaintiffs' Motion to Strike the Rule 68 Offer of Judgment, [Docket No. 97].

## IV.    CONCLUSION

A. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that:

Plaintiffs' Motion to Amend Scheduling Order to Permit Service of Second Amended Class Action Complaint, [Docket No. 89], is **DENIED.**

B.   For the foregoing reasons, **IT IS RECOMMENDED** that:

Plaintiffs' Motion to Strike Rule 68 Offer of Judgment, [Docket No. 97], be

**GRANTED**.

Dated: April 19, 2017                                   s/Leo I. Brisbois
                                                        The Honorable Leo I. Brisbois
                                                        United States Magistrate Judge

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.