# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| ALEXIE PORTZ, JILL KEDROWSKI, ABIGAIL KANTOR, MARILIA ROQUE DIVERSI, FERNANDA QUINTINO DOS SANTOS, MARIA HAUER, HALEY BOCK, KAITLYN BABICH, ANNA LINDELL, and KIERSTEN ROHDE, *individually and on behalf of all those similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>ST. CLOUD STATE UNIVERSITY and MINNESOTA STATE COLLEGES AND UNIVERSITIES,<br><br>Defendants. | Civil No. 16-1115 (JRT/LIB)<br><br>**ORDER REVERSING THE ORDER OF THE MAGISTRATE JUDGE AND GRANTING LEAVE TO AMEND COMPLAINT** |

Andrew T. James, Donald Chance Mark, Jr., and Sharon L. Van Dyck, **FAFINSKI MARK & JOHNSON, P.A.**, 775 Prairie Center Drive, Suite 400, Eden Prairie, MN 55344, for plaintiffs.

Kevin A. Finnerty, Assistant Attorney General, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 900, St. Paul, MN 55101, for defendants.

Plaintiffs Alexie Portz, Jill Kedrowski, Abigail Kantor, Marilia Roque Diversi, Fernanda Quintino dos Santos, Maria Hauer, Haley Bock, Kaitlyn Babich, Anna Lindell, and Kiersten Rohde (collectively "Plaintiffs") appeal United States Magistrate Judge Leo I. Brisbois's order denying Plaintiffs' motion for leave to amend their complaint against Defendants St. Cloud State University ("SCSU") and Minnesota State Colleges and Universities (collectively "Defendants"). Plaintiffs sought to add two additional claims under Title IX based on Title IX's requirements regarding equal allocation of athletics-related financial assistance and equal allocation of athletic treatment and

benefits.  The Magistrate Judge denied Plaintiffs' motion, reasoning Plaintiffs filed an untimely motion and failed to show good cause for the delay as required by Fed. R. Civ. P. 16(b)(4).  Because the Court finds good cause for the amendment after considering all relevant circumstances and factors, the Court will sustain Plaintiffs' objections and reverse the Magistrate Judge's order.

## BACKGROUND

Plaintiffs filed the initial complaint on April 28, 2016. (Compl., Apr. 28, 2016, Docket No. 1.)  In Count I, Plaintiffs alleged that SCSU provided proportionally greater participation opportunities for male athletes than female athletes in violation of Title IX. (*Id.* ¶¶ 2, 44-45, 61-78.)  Count II alleged that SCSU's failure to provide equal amounts of benefits and opportunities to male and female athletes was in violation of the Equal Protection Clause of the Fourteenth Amendment. (*Id.* ¶¶ 4, 79-89.)

On July 25, 2016, the Court granted Plaintiffs' motion for a preliminary injunction, enjoining Defendants from eliminating or reducing support for SCSU's women's tennis team.  *Portz v. St. Cloud State Univ.*, 196 F. Supp. 3d 963, 978 (8th Cir. 2016).  On August 16, 2016, the parties filed a joint stipulation expanding the preliminary injunction to preclude SCSU from eliminating or reducing resources to the women's Nordic skiing team.  (Joint Stipulation to Amend Order Granting Mot. for a Prelim. Inj., Aug. 16, 2016, Docket No. 40.)

On August 26, 2016, Plaintiffs served their first set of interrogatories and requests for production.  (*See* Decl. of Andrew T. James ("James Decl."), Ex. 3 at 96-97, Nov. 15,

2016, Docket No. 72; *id.*, Ex. 5 at 117-18.)  On September 23, 2016, at Defendants' request, Plaintiffs' counsel granted a one-week extension for production in response to Plaintiffs' discovery requests, resulting in an October 5, 2016, deadline for production. (*Id.*, Ex. 6 at 121.)  On September 26, 2016, Defendants alerted Plaintiffs that they would not be able to comply with the October 5 deadline, and Plaintiffs again agreed to extend the deadline to October 12, 2016.  (*Id.* at 120.)  On September 29, 2016, the parties filed a joint stipulation to amend the compliant, which was granted, and Plaintiffs filed an amended complaint.  (Order Granting Pl. Leave to Amend, Sept. 30, 2016, Docket No. 56; Am. Compl., Sept. 30, 2016, Docket No. 57.)  In their amended complaint, Plaintiffs alleged that, with respect to Title IX, "[a]t the time this Complaint was filed, only equal athletic participation opportunities are at issue in this case."  (Am. Compl. ¶ 39.)

On October 4, 2016, the Magistrate Judge entered the Pretrial Scheduling Order, stating "[t]hat all Motions which seek to amend the pleading or add parties must be filed and the Hearing thereon completed on or before **November 15, 2016**."  (Pretrial Scheduling Order at 2, Oct. 4, 2016, Docket No. 59.)  On October 31, 2016, Plaintiffs received from Defendants two CDs containing vast amounts of information – one CD contained 9,336 documents – in response to Plaintiffs' requests for production.  (James Decl., Ex. 8.)

On November 16, 2016, Plaintiffs filed a motion to file a second amended complaint, alleging that the information contained in the CDs produced on October 31 provided a basis to assert additional Title IX claims, which they previously did not have

evidence to allege. (Pls.' Mot. to Amend the Am. Verified Compl., Nov. 16, 2016, Docket No. 74.) On December 15, 2016, the Magistrate Judge held a hearing on the motion and took it under advisement. (Min. Entry, Dec. 15, 2016, Docket No. 78.) The Magistrate Judge denied the motion on January 17, 2017, finding an absence of good cause to allow an amendment past the deadline under Rule 16(b)(4). (Order at 20, Jan. 17, 2017, Docket No. 79.) The Magistrate Judge reasoned, in part, that because the additional claims were based on information available before the October 31 document production, Plaintiffs had time to comply with the Pretrial Scheduling Order but failed to do so. (*Id.*)

Plaintiffs object to the Magistrate Judge's order, arguing that the Defendants' delay in providing the information ultimately produced on October 31 provides good cause to amend the Pretrial Scheduling Order.

## ANALYSIS

### I. STANDARD OF REVIEW

"The standard of review applicable to an appeal of a Magistrate Judge's order on nondispositive pretrial matters is extremely deferential." *Skukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 235 (D. Minn. 2013); *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007). Reversal is only appropriate if the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a)(3). For an order to be clearly erroneous, the district court must be "left with a definite and firm conviction that a mistake has been committed." *Lisdahl v. Mayo*

*Found.*, 633 F.3d 712, 717 (8th Cir. 2011) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). "[T]he district court has inherent power to review the final decision of its magistrates." *Bruno v. Hamilton*, 521 F.2d 114, 116 (8th Cir. 1975).

## II.    LEAVE TO AMEND THE COMPLAINT

When a party seeks to amend a complaint outside of the applicable scheduling order, the Court must first find that there is good cause for doing so. Fed. R. Civ. P. 16(b)(4); *see also Williams v. TESCO Servs., Inc.*, 719 F.3d 968, 977 (8th Cir. 2013). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (quoting *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006), *overruled on other grounds in Avichail ex rel. T.A. v. St. John's Mercy Health Sys.*, 686 F.3d 548, 552 (8th Cir. 2012)).

Plaintiffs contend that good cause is present because Defendants delayed production of requested discovery and prevented Plaintiffs from filing the motion for leave to amend the complaint in compliance with the scheduling order. Crucially, Plaintiffs assert that the documents provided on October 31, as well as additional information learned in November and December, provide a good faith basis for alleging the new counts. Plaintiffs claim that prior to October 31, they did not have the information necessary to set forth a good faith basis for the new claims. Defendants counter that Plaintiffs' new claims are based on information obtained long before

October 31, and that Plaintiffs had a good faith basis to bring those new claims in their prior complaints.

To begin, the Court observes that the Magistrate Judge's order denying Plaintiffs' motion for leave to amend focused on Plaintiffs' failure to show diligence. Some courts have only considered a party's diligence when determining if there is good cause under Rule 16(b). *See, e.g.*, *Aviva Sports, Inc. v. Fingerhut Direct Mktg.*, No. 09-1091, 2010 WL 4193076, at *6 (D. Minn. Oct. 7, 2010) (stating "a party does not meet the good cause standard under Rule 16(b) if the relevant information on which it based the amended claim was available to it earlier in the litigation"); *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 581-82 (D. Minn. 1999) ("The 'good cause' standard is an exacting one, for it demands a demonstration that the existing schedule 'cannot reasonably be met despite the diligence of the party seeking the extension.'" (quoting Fed. R. Civ. P. 16(b), advisory committee's note to 1983 amendment)).[1]

The Court finds, however, that the proper analysis of the motion to amend in this case is not so limited. Eighth Circuit caselaw reflects the importance of diligence to the good cause analysis, but this caselaw does not go so far as to state that diligence is

---

[1] More fully, the quoted advisory comment states, "[a]fter consultation with the attorneys for the parties and any unrepresented parties – a formal motion is not necessary – the court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16, advisory committee's note to 1983 amendment. The Court notes that this comment only explicitly contemplates motions to amend future deadlines – the comment discusses a schedule that "cannot reasonably be met," not a schedule that "could not reasonably have been met." *See id.* Thus, a somewhat different analysis may be warranted for deadlines that have already run and the moving party has no opportunity to meet the deadline if the court denies the request for an extension.

required for the district court to find good cause. *See, e.g.*, *Harris v. FedEX Nat'l LTL, Inc.*, 760 F.3d 780, 786 (8th Cir. 2014) ("A district court **acts 'within its discretion'** in denying a motion to amend which made no attempt to show good cause." (emphasis added) (quoting *Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003))); *Rahn*, 464 F.3d at 822 ("The **primary measure** of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements." (emphasis added)). And while some cases rely on *Sherman* for the proposition that a party **must** show diligence to show good cause, the Eighth Circuit only stated "**generally**[] we will not consider prejudice if the movant has not been diligent" and that prior cases "**focus** in the first instance (and usually solely) on . . . diligence." 532 F.3d at 716-17 (emphasis added).

Therefore, while diligence is the primary factor for assessing good cause, nothing limits the Court's "broad discretion in establishing and enforcing the deadlines" in the scheduling order. *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006). The Federal Rules of Civil Procedure require the Court to construe and administer Rule 16 "to secure the just, speedy, and inexpensive determination of [the] action." *See White v. Nat'l Football League*, 756 F.3d 585, 596 (8th Cir. 2014) (quoting Fed. R. Civ. P. 1). And the Court is permitted to "consider the existence or degree of prejudice to the party opposing the modification." *Id.* Further, other courts, such as the Fifth Circuit, recognize additional factors in assessing good cause under Rule 16. *See, e.g. Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) ("In determining good cause, we consider four factors: '(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing

the amendment; and (4) the availability of a continuance to cure such prejudice.'" (citation omitted)).

Moreover, there is not a clear test for when a party is diligent enough to establish good cause. In *Sherman*, for example, the Eighth Circuit found no good cause where the party sought to add an affirmative defense "two and a half years after the suit was filed; a month after the close of discovery; a month after it raised the defense in its summary judgment motion; almost eighteen months after the deadline for amending pleadings; and eight full months after it was actually aware of the . . . defense's applicability." 532 F.3d at 717. Additionally, the Eighth Circuit noted that "no change in the law, no newly discovered facts, or any other changed circumstance made the preemption defense more viable after the scheduling deadline for amending pleadings." *Id.* at 718.

Considering Plaintiffs' objections and all circumstances in this case, the Court has a definite and firm conviction that the Magistrate Judge should not have denied the motion for leave to amend. The Court finds that Plaintiffs have shown sufficient diligence. The facts here stand in stark contrast to those at issue in *Sherman*: Plaintiffs moved to amend the complaint not significantly after the deadline for such motions;[2] three months after the Court granted their motion for a preliminary injunction; less than seven months after filing the initial complaint; four months before the close of discovery; six months before the deadline for dispositive motions; eight months before the trial-

---

[2] Because the scheduling order did not set a specific deadline for the **filing** of such motions, (Pretrial Scheduling Order at 2), it is unclear exactly how late Plaintiffs filed their motion.

ready date; and just over two weeks after receiving significant discovery, which Plaintiffs contend gave them reason to believe the new claims were viable. (*See* Pretrial Scheduling Order at 2-6.) Plaintiffs make a significant argument that they did not have a reasonable basis to bring the new claims until after the scheduling deadline.[3] Defendants' delay in production, in the face of repeated attempts to procure discovery by Plaintiffs, likely prevented Plaintiffs from receiving what they viewed as necessary information to bring these additional claims. But also, more broadly, the Court finds Defendants are not prejudiced by the brief delay in the motion and that allowing Plaintiffs to amend furthers the Court's interest in just and efficient progression of this case. The Court, therefore, finds good cause to amend the Pretrial Scheduling Order, and the Court will sustain Plaintiffs' objections, reverse the Magistrate Judge's order, and grant Plaintiffs' motion for leave to amend the complaint.

**ORDER**

Based on the foregoing, and all files, records, and proceedings herein, the Court **SUSTAINS** Plaintiffs' objections [Docket. No. 80] and **REVERSES** the order of the Magistrate Judge [Docket No. 79].

---

[3] For example, Plaintiffs argue that the aggregate data provided in the Equity in Athletics Disclosure Act reports did not address whether there were "legitimate, nondiscriminatory factors" for the disparity in financial assistance awards. Title IX and Intercollegiate Athletics, 44 Fed. Reg. 71413, 71415 (Dec. 11, 1979). Similarly, Plaintiffs argue that they did not have enough information regarding the presence of objective, gender neutral factors that could justify disparities in allocation of treatment and benefits, among other things. *See id.* at 71415-16 (discussing possible justifications for differences in treatment).

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Leave to Amend Complaint [Docket No. 74] is **GRANTED**.

DATED: August 4, 2017                 _____John R. Tunheim_____
at Minneapolis, Minnesota.                JOHN R. TUNHEIM
                                                      Chief Judge
                                        United States District Court