UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| ALEXIE PORTZ, JILL KEDROWSKI, ABIGAIL KANTOR, MARILIA ROQUE DIVERSI, FERNANDA QUINTINO DOS SANTOS, MARIA HAUER, HALEY BOCK, KAITLYN BABICH, ANNA LINDELL, and KIERSTEN ROHDE, *individually and on behalf of all those similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> ST. CLOUD STATE UNIVERSITY and MINNESOTA STATE COLLEGES AND UNIVERSITIES, <br><br> Defendants. | Civil No. 16-1115 (JRT/LIB) <br><br> **MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO STAY** |

Sharon L. Van Dyck, **VAN DYCK LAW FIRM, PLLC**, 310 Fourth Avenue South, Suite 5010, Minneapolis, MN 55415, and Donald C. Mark, Jr., and Tyler P. Brimmer, **FAFINSKI MARK & JOHNSON, P.A.**, 775 Prairie Center Drive, Suite 400, Eden Prairie, MN 55344, for plaintiffs.

Kevin A. Finnerty and Ian M. Welsh, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Saint Paul, MN 55101, for defendants.

Before the Court is the motion of Defendants St. Cloud State University ("SCSU") and Minnesota State Colleges and Universities ("MNSCU") to modify the Permanent Injunction while the Court's August 2019 Findings of Fact, Conclusions of Law, and Order for Judgment is on review at the Eighth Circuit Court of Appeals. The Court will deny the

motion because Defendants are unlikely to succeed on the merits, because Defendants need not face irreparable injury, because Plaintiffs will be irreparably injured absent the Permanent Injunction, and because the public interest favors immediate enforcement of the Permanent Injunction.

## BACKGROUND

Plaintiffs are female student-athletes who attend or recently attended SCSU and were members of SCSU's varsity intercollegiate women's tennis or women's Nordic skiing teams. (Findings of Fact, Conclusions of Law, and Order for Judgment ("Order") at 3–4, Aug. 1, 2019, Docket No. 380.) Plaintiffs represent a class certified as "all present, prospective, and future female students at [SCSU] who are harmed by and want to end [SCSU's] sex discrimination in: (1) the allocation of athletic participation opportunities … and (3) the allocation of benefits provided to varsity athletes." (*Id.* at 4.) SCSU is a university in the MNSCU system. (*Id.* at 3.)

In August 2019, after a seven-day bench trial, the Court found that SCSU did not comply with Title IX in its allocation of athletic participation opportunities and treatment and benefits and had not since at least 2014. (*Id.* at 63.) The Court entered a Permanent Injunction requiring that SCSU take immediate steps to provide its female students with an equitable opportunity to participate in varsity intercollegiate athletics and with equitable athletic-related treatment and benefits at every tier of its athletic department. (*Id.* at 63–64; *see also* 2d. Am. Judgment, Aug. 5, 2019, Docket No. 383.) Specifically, the Permanent Injunction requires that:

a) SCSU must take immediate steps to provide its female students with an equitable opportunity to participate in varsity intercollegiate athletics. SCSU must:

   i) Maintain the women's tennis and Nordic skiing teams at a level of support comparable to other SCSU teams within the same tier of support, as long as there is sufficient interest and ability to maintain the women's tennis and Nordic skiing teams, and take other immediate steps to narrow the participation gap; or

   ii) Otherwise take other steps to narrow the participation gap if the women's tennis and/or Nordic skiing teams are no longer viable varsity teams.

b) SCSU must take immediate steps to provide its female athletes with equitable athletic-related treatment and benefits at every tier of its athletic department. SCSU must:

   i) Take immediate steps to permanently improve the practice and competitive facilities of its women's sports teams to create equity between SCSU's women's and men's teams, specifically, by promptly completing renovations on Selke Field and the women's Nordic ski team room, among other improvements to the women's facilities;

   ii) Take immediate steps toward eliminating the inequity stemming from the unequal distribution of women and men's participation opportunities among the tiers of support; and

   iii) Take immediate steps toward eliminating other inequities between the male and female teams' locker rooms.

c) SCSU's actions must be reasonably calculated to achieve full compliance with Title IX in a reasonable period of time.

d) This Court shall maintain jurisdiction over this action to monitor Defendants' compliance with the Court's orders. Defendants shall make reports to the Court every six months to monitor compliance with the Court's orders and with Title IX. The Court will consider appointment of an independent monitor if sufficient progress is not made within a reasonable period of time.

(2d. Am. Judgment.)

SCSU and MNSCU filed a notice of appeal to the Eighth Circuit on September 3, 2019. (Notice of Appeal, Sept. 3, 2019, Docket No. 391.) SCSU and MNSCU now bring a motion requesting that the Court stay enforcement of the Permanent Injunction. (Mot. to Stay Judgment, Sept. 9, 2019, Docket No. 394.) Specifically, the Court understands SCSU and MNSCU to request a modification of the Permanent Injunction. Rather than a complete stay of enforcement, SCSU and MNSCU request that the terms of the Permanent Injunction be reduced, pending appeal, to the terms of the preliminary injunctions entered on July 25, 2016, and August 23, 2016.[1] (*See* Order ("July 2016 Injunction"), July 25, 2016, Docket No. 38; Am. Order ("August 2016 Injunction"), August 23, 2019, Docket No. 43.) The July 2016 preliminary injunction enjoined SCSU and MNSCU from:

(1) Eliminating SCSU's interscholastic women's tennis team;

(2) Involuntarily terminating the employment of the coaches of SCSU's interscholastic women's tennis team;

(3) Reducing support for SCSU's interscholastic women's tennis team; and

(4) Restricting or denying SCSU's interscholastic women's tennis team's access to facilities, coaching, training, or competitive opportunities.

(July 2016 Injunction at 27.) The August 2016 Injunction added that:

(1) Until further order of the Court, Defendants are preliminarily enjoined from eliminating St. Cloud State University's interscholastic women's Nordic skiing team;

(2) Until further order of the Court, Defendants are preliminarily enjoined from reducing support for St. Cloud State University's interscholastic women's Nordic skiing team;

---

[1] Plaintiffs have filed a Motion for Contempt alleging that SCSU knowingly violating the preliminary injunction. (Docket No. 410.) The Court will consider those issues in a separate order.

(3) Until further order of the Court, Defendants are preliminarily enjoined from restricting or denying St. Cloud State University's interscholastic women's Nordic skiing team's access to facilities, coaching, training, or competitive opportunities; and

(4) St. Cloud State University may make lawful employment decisions concerning its Nordic skiing coaches.

(August 2016 Injunction at 2.)

## ANALYSIS

### I. LEGAL STANDARD

Federal Rule of Civil Procedure 62(d) gives the Court the power, while an appeal is pending from a final judgment that grants an injunction, to "suspend, modify, restore, or grant an injunction." In considering a motion to stay an injunction pending appeal, the Court considers the following factors:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
(2) whether the applicant will be irreparably injured absent a stay;
(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
(4) where the public interest lies.

*Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011).

The most important factor in the stay analysis "is the appellant's likelihood of success on the merits." *Id.* But the Court nevertheless considers the relative strength of the four factors, "balancing them all." *Id.* The party seeking a stay "must show that it will suffer irreparable injury" absent a stay; clear evidence of irreparable injury reduces the burden on the moving party to show certainty of victory. *Id.* While granting a stay gives the appellate court time to make a well-reasoned and thorough decision, the Supreme Court

has also noted that "[a] stay is an intrusion into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009). As a result, a stay "is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Id.*

## II. LIKELIHOOD OF SUCCESS

As noted above, likelihood of success is the most important factor in the stay analysis. *Brady*, 640 F.3d at 789. However, SCSU and MNSCU "need not establish an absolute certainty of success," but instead must make a strong showing that that they are "likely to succeed on the merits." *Iowa Utilities Bd. v. F.C.C.*, 109 F.3d 418, 423 (8th Cir. 1996)

SCSU takes issue with the Court's discussion of tiering on pages 6, 52, 56, and 64-65 of the Order. SCSU argues that the Court erred in (1) finding that SCSU has three tiers of sports, (2) considering SCSU's tiered structure (3) using tiers to determine whether SCSU was in compliance with Title IX, and (4) ordering SCSU to allocate participation opportunities and treatment and benefits according to tiers. SCSU argues that on appeal the Eighth Circuit is likely to reverse the Court's findings about tiers.

### A. SCSU Has Three Tiers

As factfinder, based on evidence presented at trial, the Court found that SCSU organizes its intercollegiate sports into three tiers offering three different levels of support for each tier. The Court found that women were underrepresented in Tier 1 and Tier 2 sports, which come with higher levels of support. The Court found that women were overrepresented in Tier 3 sports, which receive the lowest level of support. This evidence is in the record. SCSU disagrees with the Court's findings but has not demonstrated that

such findings are clearly erroneous. Fed. R. Civ. P. 52(a)(6); *see also Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985).

### B. OCR Guidance Supports The Court's Findings

SCSU then argues that the Court departed from the U.S. Department of Education, Office for Civil Rights ("OCR") guidance by finding that SCSU has three tiers of support for its sports programs. SCSU notes that the OCR and its predecessor, the Department of Health, Education, and Welfare, rejected attempts by universities to rely on team-based comparisons of "major" and "minor" sports in its 1979 Policy Interpretation.

The 1979 Policy Interpretation was developed to help "provide institutions of higher education with additional guidance on the requirements for compliance with Title IX." 44 Fed. Reg. at 71,413. The Policy Interpretation walks through Title IX and how universities should apply the policy. Following these explanations, the Policy Interpretation reviews various comments made by the public and provides the OCR's response. In response to one comment, the OCR considered whether universities should be permitted to compare the number of men's "major" teams with the number of women's "major" teams (and men's "minor" teams with women's "minor" teams) as a proxy for equal treatment.[2] 44

---

[2] The relevant text of the Policy Interpretation is as follows:

Comment: Some commenters urged the Department to adopt various forms of team-based comparisons in assessing equality of opportunity between men's and women's athletic programs. They stated that well-developed men's programs are frequently characterized by a few "major" teams that have the greatest spectator appeal, earn the greatest income, cost the most to operate, and dominate the program in other ways. They suggested that women's programs should be similarly constructed and that comparability should then be required only between "men's major" and "women's major" teams, and between "men's minor" and "women's minor" teams. The men's teams most often cited as appropriate for "major" designation have been football and basketball, with women's basketball and volleyball being frequently selected as the counterparts.

Fed. Reg. at 71,422. The OCR rejected this formula, finding that it would have "the effect of disproportionately providing benefits or opportunities to the members of one sex." *Id.* The OCR explains that because "major" men's sports have significantly more participation opportunities than "major" women's sports, women would be disenfranchised. *Id.*

In its Order, the Court found that SCSU operated exactly the type of system the OCR rejected; a tier-based system that resulted in unequal treatment for women athletes. The OCR's Policy Interpretation prevents universities from skirting the requirements of Title IX through "major" and "minor" sports. It does not prevent the Court from considering SCSU's tiered structure.

### C. SCSU Is Not In Compliance With Title IX Regardless Of Tiers

SCSU is also unlikely to succeed on appeal because the Court did not rely on SCSU's tier structure in conducting its Title IX analysis. An understanding of SCSU's tiering system is useful in illustrating the level of resources provided to each sport, and the associated opportunities for male and female athletes. Tiering is also useful as a reference point in the injunction, because it allows the Court to describe, comparatively, how SCSU must support women's athletics. However, the Court found that SCSU did not comply

---

Response: There are two problems with this approach to assessing equal opportunity. First, neither the statute nor the regulation calls for identical programs for male and female athletes. Absent such a requirement, the Department cannot base noncompliance upon a failure to provide arbitrarily identical programs, either in whole or in part. Second, no subgrouping of male or female students (such as a team) may be used in such a way as to diminish the protection of the larger class of males and females in their rights to equal participation in educational benefits or opportunities. Use of the "major/minor" classification does not meet this test where large participation sports (e.g. football) are compared to smaller ones (e.g. women's volleyball) in such a manner as to have the effect of disproportionately providing benefits or opportunities to the members of one sex.

Fed. Reg. at 71,422.

with Title IX because, on a program-wide basis, SCSU did not provide equitable athletic participation opportunities in the past or present. The Court's finding that there are significant disparities between SCSU's treatment of men's and women's athletic teams, and its allocation of benefits to these teams, similarly did not require the tiering analysis. With the exception of one note involving the poorer quality of women's basketball lockers as compared to equivalent (Tier 1) teams, the Court's analysis is devoid of references to tiers. Thus, even if SCSU were to succeed in its appeal regarding tiering, it would have no effect on the Court's findings of past and present discrimination.

### D. The Injunction Is Program-Wide

Finally, SCSU is unlikely to succeed in its argument that the Court erred when it ordered SCSU to "Take immediate steps toward eliminating the inequity stemming from the unequal distribution of women and men's participation opportunities among the tiers of support." (*See* 2d. Am. Judgment.) SCSU essentially argues that such a requirement is not a "program-wide" analysis. The Court disagrees. SCSU has cited no caselaw indicating that consideration of tiers, as a method of reviewing "the availability, quality and kinds of benefits, opportunities, and treatment afforded members of both sexes," is improper. Policy Interpretation, 44 Fed. Reg. at 71,415.

Overall, the Court finds that SCSU has not made a strong showing that it is likely to succeed on the merits.

### III. IRREPARABLE HARM TO SCSU

SCSU argues that it will be irreparably harmed in the absence of a stay if it eliminates sports programs in order to comply with the Permanent Injunction.

"In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utilities Bd.,* 109 F.3d at 425. The Court previously recognized that college students suffer irreparable harm when they are denied the opportunity to play sports. *See* Order at 61 (citing *McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 302 n.25 (2d Cir. 2004) (collecting cases)).

SCSU argues that in order for it to cease discriminating against women, it must wholly deprive other (presumably male) students of participation and eliminate their sports teams. Such a deprivation, it argues, would constitute irreparable harm. This is a strawman. The Court has at no time required that SCSU eliminate any sports teams. SCSU is free to choose other alternatives that would satisfy the Permanent Injunction, such as lowering financial support to all its sports programs. SCSU may choose to eliminate sports teams, but this would be SCSU's choice alone, not the Court's, and any harm resulting from such a choice would be self-inflicted. *See, e.g., Sierra Club v. U.S. Army Corps of Engineers*, 645 F.3d 978, 997 (8th Cir. 2011) (considering self-inflicted injury when balancing the harms for injunctive relief).

It is true that compliance with the Permanent Injunction places a burden on SCSU. However, the harms from the elimination of sports programs are neither certain nor imminent and are thus not irreparable.

### IV. IRREPARABLE HARM TO OTHERS

SCSU argues that others will not be harmed by the stay. The Court considered this issue in analyzing whether to order the Permanent Injunction. The Court found explicitly

that "Plaintiffs, and all those similarly situated, have or will suffer an irreparable injury and will continue to suffer an irreparable injury absent an injunction." (Order at 61.) The Defendants have not provided assurances to the contrary, and the Court's analysis has not changed. Although SCSU argues that converting the Permanent Injunction to the preliminary injunctions will prevent this harm, they fail to address the prior findings of the Court. The preliminary injunctions bar SCSU from eliminating and reducing support for two women's teams. However, the Court also found that additional requirements of the Permanent Injunction were necessary because even "where some female students were afforded a participation opportunity, many still received inequitable treatment and benefits. The injuries suffered by female students constitute irreparable harms." (*Id*.) SCSU's proposed modification of the Permanent Injunction would not allay this irreparable harm.

Staying the Permanent Injunction—even converting it to the preliminary injunctions—will cause irreparable harm and substantially injure female athletes at SCSU.

## V. PUBLIC INTEREST

The Court also considered the public interest in its analysis of the Permanent Injunction. "It is firmly in the public's interest to enforce antidiscrimination laws such as Title IX." (*Id*. at 62.) SCSU has not argued otherwise, and the Court's findings have not changed. SCSU argues that compliance with the injunction will require it to "eliminate certain sports teams" which "could affect scores of student-athletes." (Mot. to Stay Judgment at 7.) The Court is not unsympathetic to SCSU's budget concerns. However, as discussed above, the Court has not required that SCSU eliminate sports teams. SCSU's methods and plans for compliance are within its own discretion. As the Court previously

noted, "SCSU is still free to implement other cost containment strategies that do not discriminate against women." (*Id.*)  On the whole, the public interest favors enforcement of the Permanent Injunction.

## CONCLUSION

None of the four factors point in favor of a stay of the Permanent Injunction pending appeal.  The Court will thus deny SCSU and MNSCU's Motion.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Stay Judgment [Docket No. 394] is **DENIED**.

DATED:  December 11, 2019
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court