# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| ALEXIE PORTZ, JILL KEDROWSKI, ABIGAIL KANTOR, MARILIA ROQUE DIVERSI, FERNANDA QUINTINO DOS SANTOS, MARIA HAUER, HALEY BOCK, KAITLYN BABICH, ANNA LINDELL, and KIERSTEN ROHDE, *individually and on behalf of all those similarly situated*,<br><br>                        Plaintiffs,<br><br>v.<br><br>ST. CLOUD STATE UNIVERSITY and MINNESOTA STATE COLLEGES AND UNIVERSITIES,<br><br>                        Defendants. | Civil No. 16-1115 (JRT/LIB)<br><br>**MEMORANDUM OPINION AND ORDER ON PLAINTIFFS' MOTION FOR FEES AND COSTS** |

Tyler P. Brimmer and Donald Chance Mark, Jr., and Adina R. Florea, **FAFINSKI MARK & JOHNSON, P.A.**, 775 Prairie Center Drive, Suite 400, Eden Prairie, MN 55344, for plaintiffs.

Kevin Finnerty, Assistant Attorney General, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1800, Saint Paul, MN 55101, for defendants.

Before the Court is Plaintiffs' motion for attorney's fees and costs. Because some of the fees and costs sought by Plaintiffs are unreasonable or are not available under 42 U.S.C. § 1988, the Court will grant in part and deny in part Plaintiffs' motion and award Plaintiffs $1,171,442.90 in reasonable attorney's fees and costs.

## BACKGROUND

Plaintiffs are female student-athletes who attend or recently attended St. Cloud State University ("SCSU") and were members of SCSU's varsity intercollegiate women's tennis or women's Nordic skiing teams. (Findings of Fact, Conclusions of Law, and Order for Judgment ("Trial Order") at 3–4, Aug. 1, 2019, Docket No. 380.) Plaintiffs filed their initial action on April 28, 2016, alleging violations of Title IX based on unequal athletic participation opportunities and sex-based discrimination in violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. (Compl., Docket No. 1.) In July 2016, the Court granted a preliminary injunction providing specific protections for the SCSU women's tennis team; in August 2016 the Court extended protections to the women's Nordic skiing team as well. (Prelim. Inj. Order, July 25, 2016, Docket No. 38; Order Am. Prelim. Inj., Aug. 23, 2016, Docket No. 43.)

In August 2017, Plaintiffs amended their complaint to add claims under Title IX for unequal allocation of athletic-related financial assistance and unequal allocation of athletic treatment and benefits. (2d Am. Compl., Aug. 15, 2017, Docket No. 184.) In February 2018, the Court certified Plaintiffs' putative class. (Order Granting Class Cert. & Granting Partial Summ. J. at 50, Feb. 26, 2018, Docket No. 241.) At the same time, the Court also dismissed Plaintiffs' § 1983 claim. (*Id.*) In July 2018, the Court dismissed Plaintiffs' unequal allocation of athletic-related financial assistance Title IX claim. (Order Granting 2d. Partial Summ. J., July 25, 2018, Docket No. 274.)

After a seven-day bench trial, the Court found that SCSU did not comply with Title IX in its allocation of athletic-participation opportunities and treatment and benefits, and

had not since at least 2014. (Trial Order at 63.) The Court entered judgment for the Plaintiffs and against the Defendants and noted that "[u]pon application to the Court, reasonable attorneys' fees and costs will be awarded to Plaintiffs' counsel" on the "claims on which Plaintiffs prevailed." (*Id.* at 65; *see also* 2d. Am. Judgment, Aug. 5, 2019, Docket No. 383.)[1]

## ANALYSIS

### I. LEGAL STANDARD

The Court may, in its discretion, allow a prevailing plaintiff "a reasonable attorney's fee as part of the costs" in a successful Title IX case. 42 U.S.C. § 1988. Courts generally begin by determining the "lodestar," which is calculated by multiplying a reasonable hourly billing rate by a reasonable number of hours worked. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Court must then exclude hours that were not "reasonably expended." *Id*.

### II. ANALYSIS OF FEES

In considering Plaintiffs' fee requests, the Court will first review Plaintiffs' requested rates. The rates appear to be reasonable given both the experience of counsel and staff and the market. Furthermore, SCSU did not raise any challenge to the requested rates. The Court then will address SCSU's various objections to general and specific hours billed and requested by Plaintiffs' counsel.

---

[1] Defendants filed a notice of appeal to the Eighth Circuit on September 3, 2019. (Notice of Appeal, Sept. 3, 2019, Docket No. 391.) The appeal does not affect the Court's jurisdiction over the motion for attorney's fees. *See Harmon v. U.S. Through Farmers Home Admin.*, 101 F.3d 574, 587 (8th Cir. 1996) ("[W]here the issue of attorney fees is not before the court of appeals … the district court may consider it.")

### A. Failure to Settle and Failure to Streamline the Trial

First, SCSU argues that Plaintiffs acted in bad faith to extend the litigation, and that in fact they should have settled the case long ago. SCSU argues that Plaintiffs should be paid through their successful hearing for a preliminary injunction on June 13, 2016, but no more; SCSU seeks a reduction in fees of approximately 94%.

SCSU argues that such a reduction is fair because when SCSU attended a mediation in October 2016, Plaintiffs' counsel was present, but Plaintiffs themselves were absent and only available by telephone. The parties reported the facts of the mediation to the Magistrate Judge, including that at the time of the writing, Plaintiffs had made a settlement offer and SCSU had not made any counteroffer. (Correspondence, Docket Nos. 63–64, 66.) It does not appear that Plaintiffs acted unreasonably when they did not settle at this mediation conference. However, it seems that Plaintiffs were not entirely upfront with SCSU about whether the named Plaintiffs would be present at the mediation. SCSU had a reasonable expectation that the named Plaintiffs would attend, especially given Plaintiffs' counsel's negotiations about the date, time, and location for the mediation. As a result, the Court will reduce Plaintiffs' fees associated with the 2016 mediation by 50%, or $4,986.79.

SCSU also argues that because the parties failed to settle at two subsequent settlement conferences, Plaintiffs' fees should be docked. The Court has no reason to believe that Plaintiffs did not engage in these settlement conferences in good faith. By the time of the last settlement conference in September 2018, the parties remained far apart on multiple issues. Going to trial, without more, does not indicate that Plaintiffs acted in bad

faith, or with the intent merely to run up fees. The Court declines to reduce Plaintiffs' fee demand on these grounds.

SCSU also argues that because Plaintiffs delayed in responding to SCSU's stipulation of uncontested facts and matters not in controversy, Plaintiff's trial costs should be reduced by 25%. Plaintiffs responded to SCSU's proposed stipulation five weeks after SCSU sent it, and approximately one week before the trial. While such a delay is hardly a best practice, it is not clear why Plaintiffs' delayed response would have added to Plaintiffs' bills. Without knowing what Plaintiffs might or might not stipulate to, it is likely that the SCSU was required to expend more work preparing for the uncertainty. Plaintiffs, however, had the information and would have been able to prepare for trial accordingly. The Court will not reduce trial fees based on the delayed stipulation.

**B.     Inspections**

SCSU also argues that Plaintiffs conducted discovery outside the bounds of Fed. R. Civ. P. 34, and that fees and costs associated with unauthorized site visits are not recoverable. SCSU brought a motion in limine regarding certain discovery obtained during the course of one of these site visits prior to the trial. There, SCSU sought to bar from trial any evidence obtained during these visits. The Court denied the motion, finding that "Plaintiffs were accompanied by persons with authorized access to the facilities toured, including an SCSU faculty member and current student athlete." (Order on Motions in Limine at 5, Nov. 21, 2018, Docket No. 333.) The Court does not find reason to exclude fees or costs relating to these visits.

## C. Contempt

Because Plaintiffs' Motion for Contempt has only recently been briefed and the Court has not yet heard argument, the Court will defer judgment as to the costs and fees associated with Plaintiffs' motion for contempt. The Court estimates the total submitted fees for the contempt motion at $17,731.95. If Plaintiffs are successful on their Motion for Contempt, the Court may enter an additional award for some or all of this amount. If Plaintiffs are unsuccessful in their Motion, the Court will decline to award fees.

## D. Unnecessary Motions, Inefficient and Duplicative Work

In the course of the litigation, Plaintiffs have submitted a number of costs that could have or should have been avoided. The Court will not order fees for any of this unnecessary work.

First, Plaintiffs submitted bills for the attendance of multiple attorneys at depositions, hearings, and conferences that could have been ably handled by one attorney. The Court will decline to award fees for attorneys other than the lead attorney and finds that the additional fees for unnecessary lawyers amount to $10,522.08.

Second, Plaintiffs failed to comply with Local Rule 7.1 when considering their motion in limine and failed to meet and confer with SCSU. Plaintiffs' motion was unopposed because SCSU had no intention to using the testimony in question. Plaintiffs could have avoided this unnecessary work if they had met and conferred with SCSU as required by the local rules. The Court estimates that the fees associated with this motion total $2,548.20, and the Court will decline to award this amount.

### E. Fees on Fees

Plaintiffs submitted billing related to fees as early as March 2019. Although this work was billed by a paralegal, it was premature in light of the fact that the Court had not yet issued its Order in this case and would not for several months. As a result, the Court will disallow $1,254.00 in premature fee and cost preparations.

### F. Consulting Attorney Fees

Plaintiffs' attorney's fees bills include time for partners and associates at Fafinksi Mark & Johnson ("FMJ"), and include time for (1) attorneys of record, (2) associates who did not enter an appearance before the Court, and (3) paralegals. The bills also include time for Sharon Van Dyck, formerly associated with FMJ, who now practices at Van Dyck Law Firm. Finally, Plaintiffs also submitted bills for Kristin Galles, a Title IX specialist who acted as advisory counsel during the litigation. Galles did not enter an appearance before the Court, nor did she sign any papers. The Court does not know whether Galles is admitted to practice in the District of Minnesota; she did not move to be admitted pro hac vice.

SCSU argues that because Galles did not appear before the Court, because she is potentially not admitted to practice before the Court, and because SCSU was not well-informed of her role in the case, the Court should consider Galles to be a retained non-testifying expert, rather than counsel. The distinction is relevant in this case because, as discussed below, although attorney's fees are payable under 42 U.S.C. § 1988, expert fees are not.

In determining whether and when an out-of-state advisory counsel or legal consultant may recover fees, the Court finds that a test set out in *Gsell v. Rubin & Yates, LLC* provides a useful framework for the analysis. 41 F. Supp. 3d 443, 450 (E.D. Pa. 2014). After reviewing federal caselaw, the court determined that federal courts were likely to award fees to this category of legal advisor when that individual:

(1) refrained from direct client contact;
(2) refrained from contact with opposing counsel;
(3) did not sign or draft substantial portions of pleadings, especially the complaint;
(4) restricted his participation in the case to reviewing motions, drafting internal memos, and advising lead counsel, such that his work was supervised by, and ultimately "filtered" through the lead attorney; and
(5) recorded only a modest number of hours on a case, relative to lead counsel and other admitted attorneys working on a case.

*Id.* (citations omitted). Galles meets four of these criteria. Galles did not contact opposing counsel; indeed, SCSU writes that Plaintiffs' counsel mentioned her name was only once during the course of the litigation. Galles did not sign the pleadings, and the submitted bills indicate that she did not draft substantial portions of the pleadings. A review of Galles's bills demonstrates that she generally restricted her participation to an advisory role, reviewing documents and providing feedback, edits, and advice. Finally, Galles billed 141 hours during the multi-year litigation (less time not submitted to the Court related to dismissed claims). This is a very small number of hours compared with Plaintiffs' primary counsel. In comparison, the lead partner, Donald Chance Mark Jr., billed 662.9 hours; Sharon Van Dyck 611.0 hours, and associate Andrew T. James billed 1664.7 hours.

Galles varies from the rubric in the first category, however. Plaintiffs contacted Galles directly, and Galles introduced Plaintiffs to FMJ. Galles maintained contact with

Plaintiffs throughout the litigation. In this category, Galles acted much more like retained counsel than like an expert. SCSU argues that Plaintiffs have not produced Galles's retainer agreement, but Galles's bills alone indicate that there was an attorney-client relationship with the Plaintiffs. Taken as a whole, there is no reason to classify Galles as an expert. She instead operated either as counsel or as a legal consultant, and thus her fees are potentially payable under 42 U.S.C. § 1988.

The question remains, however, whether Galles's hours would be compensable if Galles was acting purely as lead counsel but was not admitted to practice before the Court. The Court has previously denied fees to an attorney practicing in the District without proper authorization. *See, e.g., Christianson v. Markquart*, No. 16-1034 (JRT/KMM), 2018 WL 3474058, at *5 (D. Minn. July 19, 2018). However, Galles's role is distinguishable from the attorney in *Christianson*. There, the Court denied fees to a student-attorney who appeared before the court (1) without having filed a student-practice certification form and (2) without the presence of his supervising attorney and later, after graduating, (3) without filing a notice of appearance (4) despite having been previously warned of this issue. *Id.* Here, while Galles did maintain contact with Plaintiffs, she did not practice before the Court. She did not draft or sign papers, did not enter an appearance, did not argue motions, and, as far as the Court can discern from the bills, did not step foot in Minnesota. As a result, given the *Gsell* rubric, the Court finds that Galles was not lead counsel, and was instead acting as advisory counsel. The Court concludes that Galles's fees are compensable and should be included in Plaintiffs' total.

In total, after subtracting the disallowed fees, deferring the fees related to the contempt motion, and adding in Galles's fees, the Court will award Plaintiffs fees in the amount of $1,154,778.98.

## III. ANALYSIS OF COSTS

An award of fees under 42 U.S.C. § 1988 also entitles Plaintiffs to the reasonable out-of-pocket expenses normally charged to clients by attorneys. *Pinkham v. Camex, Inc.,* 84 F.3d 292, 294–95 (8th Cir. 1996).

### A. Expert Fees

Plaintiffs included in their Motion a request for $78,111.39 in payment for their expert witness. Section 1988 provides for expert fees in certain cases; however, it is, by its text, limited to an "action or proceeding to enforce a provision of section 1981 or 1981a . . . ." 42 U.S.C. § 1988(c). The Eighth Circuit has previously confirmed that the provision for expert fees in § 1988(c) does not extend to civil-rights cases outside of §§ 1981 or 1981a. *See Jenkins ex rel. Jenkins v. Missouri,* 158 F.3d 980, 983 (8th Cir. 1998) (noting that Congress amended § 1988 "to authorize the award of expert fees" in cases brought under only §§ 1981 and 1981(a)). As a result, the Court may not award expert fees as costs or otherwise in a Title IX case. Plaintiffs cost award will be decreased by $78,111.39.

### B. Other Excessive or Improper Costs

Plaintiffs also included costs for their legal research. These costs are broken out by date and amount, but do not include information as to the type of research, or to which claim the research applied. Because Plaintiffs brought a number of claims that were

dismissed prior to trial, the Court will reduce the legal research claims by 50% in order to account for research on claims that were ultimately unsuccessful. Plaintiffs' cost award will be decreased by $5,617.75.

Similarly, Plaintiffs may not recover costs associated with their travel to Fergus Falls for their summary judgment motion, because Plaintiffs did not prevail. Plaintiffs' cost award will be decreased by $179.30.

Finally, while Plaintiffs' counsel appeared for the October 2016 mediation, Plaintiffs themselves did not, and for the reasons discussed above, costs associated with the mediation will be reduced by 50%. Plaintiffs' cost award will be decreased by $450.00.

As a result, the Court awards Plaintiffs $16,663.92 in reasonable costs. Combined with the attorney's fee award, the Court grants Plaintiffs fees and costs in the amount of $1,171,442.90.

## ORDER

Based on the foregoing, and all files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Attorney Fees [Docket No. 384] is **GRANTED in part and DENIED in part**. Plaintiffs are awarded attorney's fees in the amount of $1,541,778.98, and non-taxable costs in the amount of $16,663.92.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: January 21, 2020
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court