UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| ALEXIE PORTZ, JILL KEDROWSKI, ABIGAIL KANTOR, MARILIA ROQUE DIVERSI, FERNANDA QUINTINO DOS SANTOS, MARIA HAUER, HALEY BOCK, KAITLYN BABICH, ANNA LINDELL, and KIERSTEN ROHDE, *individually and on behalf of all those similarly situated*, | Civil No. 16-1115 (JRT/LIB) |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR RELIEF FROM JUDGMENT |
| v. | |
| ST. CLOUD STATE UNIVERSITY and MINNESOTA STATE COLLEGES AND UNIVERSITIES, | |
| Defendants. | |

---

Sharon L. Van Dyck, **VAN DYCK LAW FIRM, PLLC**, 5775 Wayzata Boulevard, Suite 700, Saint Louis Park, MN 55416; Donald Chance Mark, Jr. and Jamie Pahl Briones, **FAFINSKI MARK & JOHNSON, P.A.**, 775 Prairie Center Drive, Suite 400, Eden Prairie, MN 55344, for Plaintiffs.

Elizabeth C. Kramer and Joseph D. Weiner, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1100, Saint Paul, MN 55101, for Defendants.

Plaintiffs brought this class action against Defendants St. Cloud State University ("SCSU") and Minnesota State Colleges and Universities ("MNSCU"), alleging gender discrimination in SCSU's past and present allocation of athletic opportunities, treatment,

and benefits for female student-athletes in violation of Title IX of the Education Amendments Act of 1972 ("Title IX").

After a bench trial, the Court found that SCSU was violating Title IX and issued a permanent injunction requiring SCSU to comply with the statute on a program-wide basis. Following an appeal and partial reversal of the injunction by the Eighth Circuit, the parties moved to dissolve or modify the injunction. The Court dissolved the portion of the permanent injunction relating to athletic participation opportunities but modified the remaining portion relating to treatment and benefits.

Defendants now move the Court to dissolve the remaining part of the permanent injunction relating to the equitable allocation of athletic-related treatment and benefits. Because the Court finds that SCSU is now in compliance with Title IX, it will grant Defendants' Motion for Relief and dissolve the injunction.

## BACKGROUND

The factual background of this case has been discussed at length in the Court's prior orders, so the Court will describe only the facts necessary to assess SCSU's Motion for Relief. *See Portz v. St. Cloud State Univ.* ("*Portz I*"), 401 F. Supp. 3d 834, 840–54 (D. Minn. 2019), *aff'd in part, rev'd in part, vacated in part,* 16 F.4th 577 (8th Cir. 2021) (*Portz II*); *Portz v. St. Cloud State Univ.* ("*Portz III*"), No. 16-1115, 2022 WL 4095912, at *1–4 (D. Minn. Sept. 7, 2022). Plaintiffs are female student-athletes who attend or recently attended SCSU and were members of SCSU's varsity intercollegiate Women's tennis or

Women's Nordic skiing teams. *Portz I*, 401 F. Supp. 3d at 840–41. Plaintiffs represent a class certified as "all present, prospective, and future female students at [SCSU] who are harmed by and want to end [SCSU's] sex discrimination in: (1) the allocation of athletic participation opportunities . . . and (3) the allocation of benefits provided to varsity athletes." *Id.* at 841. SCSU is a university in the MNSCU system. *Id.* at 840 (citation omitted).

Following a bench trial in 2018, the Court found that SCSU violated Title IX in its inequitable allocation of athletic participation opportunities, treatments, and benefits based on gender since 2014. *Id.* at 869. Accordingly, the Court issued a permanent injunction requiring SCSU to comply with Title IX by providing its female students with an equitable opportunity to participate in varsity intercollegiate athletics and with equitable athletic-related treatments and benefits. *Id.* at 869–70.

SCSU appealed the Court's permanent injunction. (Notice of Appeal to 8th Cir., Sept. 3, 2019, Docket No. 391.) During the appeal, every six months SCSU filed reports with updates on its compliance efforts, as required by the permanent injunction. (Letter to District Judge, Feb. 3, 2020, Docket No. 445; Letter to District Judge, Aug. 5, 2020, Docket No. 484; Letter to District Judge, Feb. 5, 2021, Docket No. 511; Letter to District Judge, Aug. 5, 2021, Docket No. 524; Letter to District Judge, Feb. 4, 2022, Docket No. 550; Letter to District Judge, July 25, 2022, Docket No. 573.) The reports include information about SCSU's efforts to comply with Title IX.

The Eighth Circuit affirmed the Court's conclusion that SCSU failed to comply with Title IX in its allocation of athletic participation opportunities but reversed the Court's conclusion regarding treatment and benefits. *Portz II*, 16 F.4th at 585. As a result, the Eighth Circuit vacated the portion of the injunction relating to treatment and benefits. *Id.* Thereafter, SCSU filed a motion to dissolve the injunction and Plaintiffs filed a motion to modify the injunction to be consistent with the Eighth Circuit's ruling. (Defs.' Mot. Dissolve Inj., Nov. 19, 2021, Docket No. 532; Pls.' Mot. Modify Inj., Jan. 14, 2022, Docket No. 541.)

The Court dissolved the part of the injunction relating to the provision of athletic participation opportunities because SCSU was in full compliance with Title IX. *Portz III*, 2022 WL 4095912, at *11. However, the Court reinstated the portion of the permanent injunction relating to treatment and benefits because SCSU was not in compliance with Title IX even though the university was providing equitable equipment and supplies, medical services, locker rooms, practice facilities, and competitive facilities. *Id.* at *8–11. Indeed, SCSU failed to produce more than conclusory statements regarding its efforts to comply with Title IX regarding its travel and per diem policies and practices and thus failed to overcome the Court's previous conclusion that compared to the Women's teams, the Men's teams traveled "more frequently, more comfortably, [and] for longer periods of time" while funded by SCSU. *Id.* at *9–10. Accordingly, the Court reinstated the permanent injunction to require SCSU to immediately implement equitable athletic-

-4-

related treatment and benefits, particularly travel and per diem policies and practices, between its Women's and Men's teams. *Id.* at *11.

Since the reinstatement of the modified permanent injunction, SCSU has provided reports every six months on its compliance with the permanent injunction. (Letter to District Judge ("February 2023 Report"), Feb. 22, 2023, Docket No. 599; Letter to District Judge ("August 2023 Report"), Aug. 22, 2023, Docket No. 609; Letter to District Judge ("February 2024 Report"), Feb. 12, 2024, Docket No. 623; Letter to District Judge ("June 2024 Report"), June 7, 2024, Docket No. 636.) Each report includes information about SCSU's efforts to comply with the Court's injunction, particularly focusing on efforts to equalize its travel and per diem policies and practices.

The February 2023 Report includes a copy of SCSU's new Athletics Team Travel Policy ("Policy"), which provides guidance on the frequency and length of travel for SCSU's student-athletes, travel accommodations, and travel funding. (February 2023 Report at 2, 4–8; *see also* 2$^d$ Decl. Holly Schreiner ("2$^d$ Schreiner Decl.") Ex. 4, Oct. 19, 2023, Docket No. 622.) The Policy enumerates the following, in relevant part:

    1. The Director of Athletics must approve all team travel.

    2. A request for team travel must be accompanied by a form providing certain information including the names of individuals on the trip, departure and return date/time, mode of transportation, lodging, contact information for the coaching staff traveling with the team, and, when possible, a travel itinerary.

   3. Guidance on allowable and non-allowable expenses.

   4. Guidance on different modes of transportation and the requirement that the Director of Athletics approve the mode of transportation used.

   5. Guidance on the permitted length of travel for each mode of transportation.

   6. Guidance on the situations permitting overnight stay.

   7. Guidance on the number of student-athletes assigned to a room for overnight stay, which instructs that generally no more than two student-athletes may be assigned per room, but in special circumstances the Director of Athletics may authorize more than two student-athletes per room.

   8. Guidance on the permitted hotel rate and per diem meal rate.

(*Id.*) Despite the university's efforts with the new Policy, however, at the time of the February 2023 Report, SCSU did not have the data to back up the equity it claimed to have achieved.

The August 2023 Report, on the other hand, does provide such data. That report includes a spreadsheet compiling data from every trip for the 2022–23 academic year. (August 2023 Report Ex. 3.) The data is derived from travel forms that were completed for each trip and details the sport/team, competition dates, departure and return dates, opposing team and location of the competition, mode of transportation (bus, plane, van), hotel information, number of student-athletes assigned per hotel room—albeit minimal, and the number of student-athletes who traveled. (*Id.*) Additionally, the report notes

that all team travel expenses for transportation and accommodations were covered by each team's budget, with one exception: the Men's baseball team used its foundation funds to cover two bus trips for Spring 2023 because of weather and to avoid disparities between Men's and Women's team travel expenses. (*Id.* Ex. 4 ("1st Schreiner Decl.") ¶ 5.)

The February 2024 Report asserts that SCSU's efforts to comply with Title IX had not changed since the August 2023 Report.[1] (February 2024 Report Ex. 1 at 2.) The report includes the same data provided in the August 2023 Report but for the 2023–24 academic year, and it includes more data on the number of student-athletes that were assigned per room, as the August 2023 Report was largely lacking in that category. (*Id.* at 5–6.) Additionally, SCSU represents to the Court that it reviewed the collected travel forms and receipts and determined that there is equitable treatment between Women's and Men's teams regarding per diem because all teams complied with the per diem requirement for the 2023–24 academic year. (*Id.* at 3–4.)

The June 2024 Report provides the most recent data for the 2023–24 academic year. (*See* June 2024 Report.) In total, the Women's teams took 86 trips and the Men's teams took 50 trips. (*Id.* at 1.) The trips for the Women's teams account for 1,504 trips for female student-athletes, and the trips for the Men's teams account for 1,139 trips for

---

[1] While SCSU's practices and policies appear to be largely unchanged, SCSU's Policy was amended in October 2023. (2d Schreiner Decl. Ex. 4.) One notable difference is that the amended Policy permits two student-athletes per hotel room instead of three. (*Id.* at 6. *Cf.* February 2023 Report at 7.)

male student-athletes.  (*Id.*)  By the Court's calculation, the breakdown of the mode of transportation for the 2023–24 academic year is as follows:[2]

|  | Plane | Bus | Van | Self-Transport |
|---|---|---|---|---|
| Number of Women's Team Trips / Total Number of Female Student-athletes | 3 / 47 | 63 / 1,235 | 17 / 183 | 3 / 27 |
| Number of Men's Team Trips / Total Number of Male Student-athletes | 1 / 34 | 45 / 1,077 | 4 / 28 | 0 / 0 |

(*Id.* Ex. 1 at 1–4.)  The report states that the data generally shows equity in the length of the trips and the overnight accommodations.  (*Id.* at 1.)  The hotels are of similar caliber, and the number of student-athletes assigned per room is consistently two, except there were three student-athletes assigned per room for two Women's teams trips and one Men's team trip.  (*Id.* at 1–2, Ex. 1 at 1, 3.)

---

[2] The Court formulated the following chart to present the data on the number of trips taken by the Women's and Men's teams, the number of student-athletes who traveled each trip, and the mode of transportation used.  For example, three Women's teams traveled by plane and 47 student-athletes traveled on those three trips.
   The chart calculations for trips taken by plane and bus are derived from the summary data in Defendants' June 2024 Report.  (June 2024 Report Ex. 1 at 4.)  Because the summary chart does not include the number of trips taken by van and self-transportation, the Court adopts Plaintiffs' calculations in their response letter.  (Letter to District Judge at 3 ("Pls.' June 2024 Letter"), June 21, 2024, Docket No. 637.)

## DISCUSSION

### I. STANDARD OF REVIEW

The determination of whether to dissolve or modify an injunction rests primarily with the district court that issued it in the first place. *United States v. Northshore Mining Co.*, 576 F.3d 840, 848–49 (8th Cir. 2009). "The district court may exercise this power when it realizes that the injunctive relief is no longer needed due to intervening circumstances." *Id.* at 849. A permanent injunction should not be extended beyond the time required to remedy the legal violations. *Tyler v. Murphy*, 135 F.3d 594, 597 (8th Cir. 1998).

### II. ANALYSIS

Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX applies to athletic programs. *See* 34 C.F.R. § 106.41(c). The main remaining challenge to SCSU's athletic program relates to the allocation of athletic-related treatment and benefits based on gender, specifically with respect to travel and per diem policies and practices. In addition, Plaintiffs bring forth two new concerns regarding the lack of equitable competitive facilities and athletic participation opportunities that were not previously at issue. The Court will address the current injunction first, and Plaintiffs' new concerns second.

### A. Treatment and Benefits

In assessing whether equal treatment and benefits are conferred to male and female athletes, § 106.41(c) of the federal regulations lays out what have been commonly referred to as the "Laundry List" factors to assist in the Court's assessment. *See* 34 C.F.R. § 106.41(c). These factors include:

> (2) The provision of equipment and supplies;
> (3) Scheduling of games and practice time;
> (4) Travel and per diem allowance;
> (5) Opportunity to receive coaching and academic tutoring;
> (6) Assignment and compensation of coaches and tutors;
> (7) Provision of locker rooms, practice and competitive facilities;
> (8) Provision of medical and training facilities and services;
> (9) Provision of housing and dining facilities and services;
> (10) Publicity.

34 C.F.R. § 106.41(c)(2)–(10). Courts must weigh these factors on a program-wide basis for all men's and women's athletic teams. 1979 Interpretation, 44 Fed. Reg. 71,413, 71,417 (Dec. 11, 1979); *see also Portz II*, 16 F.4th at 581. An institution will be in compliance if the "compared program components are equivalent, that is, equal or equal in effect." 1979 Interpretation at 71,415. Benefit and treatments need not be identical provided that the "overall effect of any differences is negligible." *Id.* If the treatment and benefits are not equal, an institution may still be in compliance if "the differences are the result of nondiscriminatory factors," such as "unique aspects of particular sports," or "legitimately sex-neutral factors related to special circumstances of a temporary nature." *Id.* at 71,415–16.

The Court must determine whether the permanent injunction relating to athletic-related treatment and benefits is still appropriate.  Since the Court modified the injunction, SCSU has documented the changes it has made to its travel and per diem policies in its six-month reports.  These reports contain the most updated information regarding SCSU's compliance efforts in the record.  *Miller v. Honkamp Krueger Fin. Servs., Inc.*, 9 F.4th 1011, 1015 n.3 (8th Cir. 2021) (relying on current facts because "[t]he purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from [future] irreparable injury.").  SCSU has made steady improvements to its travel and per diem policy and practices over the years.  In particular, SCSU's formal, written Policy addresses many of the Court's concerns by providing guidance on the frequency that SCSU's student-athletes travel, the accommodations provided when student-athletes travel, the length of travel, and the funding of that travel to prevent inequities between male and female athletes.  SCSU also collected travel forms for the 2022–23 and 2023–24 academic years, which provides data on traveling teams, the competition dates, the length of travel, the travel location, the mode of transportation used, hotel information, the number of student-athletes assigned per hotel room, and the number of student-athletes who traveled.

Reviewing the data, the Court finds that SCSU's travel practices between the Men's and Women's teams comply with Title IX.  First, the Men's and Women's teams took an equitable number of trips.  In fact, the Women's teams traveled 36 more times than the

Men's teams.³  Second, the Men's and Women's teams traveled to comparable places—generally to schools in Minnesota and the surrounding states.  Third, the Men's and Women's teams took comparable modes of transportation.  The Women's teams traveled by plane three times, by bus 63 times, by van 17 times, and self-transported three times.  By comparison, the Men's teams traveled by plane one time, by bus 45 times, by van four times, and did not self-transport.  Although the Women's teams traveled by van and self-transported more than the Men's teams, which Plaintiffs argue is inherently less comfortable than traveling by bus, this makes sense considering the Women's teams traveled more than the Men's teams.  Indeed, traveling more puts increased strain on the team's resources, and the fact that the team chose alternative modes of transportation to adapt to their higher travel needs does not make the use of other transportation forms inequitable.  Fourth, the hotel arrangements were comparable between the Men's and Women's teams.  And fifth, the number of student-athletes assigned per room was equitable.  Two student-athletes were consistently assigned per room on all the trips regardless of gender, aside from three instances—on two Women's teams trips and one Men's team trip.

---

³ The Women's teams appear to travel more often than the Men's teams to compensate for the Women's teams not having facilities of their own to host home meets, particularly the Women's track and field team which comprises a third of SCSU's female student-athletes.  (Pls.' June 2024 Letter 2–4.)

In addition to the travel form, SCSU started collecting receipts for per diem expenses to ensure compliance with the Policy, which the Court agrees demonstrates equity between the Men's and Women's teams. Finally, SCSU represented that SCSU paid for almost all teams' travels, except for the Men's baseball team in Spring 2023 which traveled twice by bus through its foundation funds.[4]

In sum, SCSU has provided evidence of compliance with Title IX in its provision of athletic-related treatment and benefits on an ongoing basis. Despite Plaintiffs' contention that additional monitorship is necessary to ensure compliance, the Court finds that continued monitorship is unnecessary because the injunction does not require SCSU to set up procedures for monitoring compliance and, as Title IX remains the law, the Court presumes that SCSU, like any law-abiding entity, will comply with the law in the future. *See Portz III*, 2022 WL 4095912, at *6.

SCSU has provided an academic years' worth of data on its travel and per diem policies and practices. The Court concludes this data demonstrate that the university

---

[4] Plaintiffs contend that it was inequitable for the Men's baseball team to use foundation funds for travel in Spring 2023 because the funding was "over and above the amount SCSU budgeted for that team," and those funds are not equally available for Women's teams. (Pls.' Mem. Opp'n Defs.' Mot. Dissolve Inj. at 10, Oct. 5, 2023, Docket No. 618.) The Court rejects Plaintiffs' argument that if SCSU permits teams to use supplemental funds for in-season travel, the university must also make available supplemental funds for teams that do not have such funding. Compliance with Title IX does not automatically require an institution to provide supplemental funding. Instead, Title IX requires the institution to provide male and female student-athletes with equal opportunities on a **program-wide basis**. 34 C.F.R. § 106.41(c). SCSU has done so.

treats male and female student-athletes equitably. Accordingly, because SCSU's legal violation of Title IX's treatment and benefits requirement has been remedied, there is no need to maintain the permanent injunction. *See Tyler*, 135 F.3d at 597. Accordingly, the Court will dissolve the permanent injunction.

### B.     Remaining Concerns

Plaintiffs urge the Court to maintain the injunction because SCSU does not currently provide equitable competitive facilities or equitable athletic participation opportunities.

First, Plaintiffs argue that SCSU does not provide equitable competitive facilities, specifically for the Women's softball team. Plaintiffs point out that the Court previously noted that SCSU's plan to move the Women's softball team from Selke Field to the Husky Dome was adequate and, in addition to the other improvements made, demonstrated that SCSU provides equitable competitive facilities. *Portz III*, 2022 WL 4095912, at *9. However, although SCSU reports that there will be a longer delay in moving the Women's softball team, they will be playing in Husky Stadium for the 2025 season. (Letter to District Judge ("July Letter") at 1–2, July 19, 2024, Docket No. 639; Letter to District Judge ("August Letter") Exs. 2, 3, Aug. 9, 2024, Docket No. 643.)

Despite Plaintiffs' concerns, Husky Stadium is an adequate facility for Women's softball, as it has "permanent restrooms and concessions, a press box, and . . . is [near] the softball team's locker rooms." *See Portz III*, 2022 WL 4095912, at *9. Furthermore,

the facility will be NCAA compliant. Indeed, Husky Stadium's field specifications will be 190 (R) x 220 (C) x 200 (L), the fencing will be six feet tall, and there will be six-foot fencing over the Dugouts, which will meet the NCAA's requirements.[5] (July Letter Ex. 1 at 2; August Letter Ex. 2.). Moreover, SCSU plans to implement NCAA recommendations, such as including Warning Tracks, Bullpens, and protective covering over the Dugouts.[6] (August Letter Ex. 2.) And although the fencing is temporary and must be constructed before practices and games, SCSU implemented a policy that prohibits student-athletes from constructing and deconstructing the fence. (*Id.* Ex. 1.) Instead, SCSU's Sports Facilities team and maintenance staff will be responsible for doing so, which will alleviate concerns regarding student-athletes being responsible for basic field set-up that falls under the responsibility of Sports Facilities and Athletics. (*Id.*)

While the plan is still underway, it is not hypothetical. SCSU has represented to the Court under oath that it is moving forward with this plan. If SCSU fails to do so, Plaintiffs may bring another action.

---

[5] The 2024–25 NCAA Guidelines differentiate existing construction and "new construction." *2024 and 2025 Rules Book*, NCAA Softball 15 (October 2023), https://www.ncaapublications.com/productdownloads/SR24.pdf. Existing construction must be 190 (R) x 220 (C) x 190 (L) and new construction must be 200 (R) x 220 (C) x 200 (L). *Id.* At the August 6, 2024 status conference, Ms. Schreiner testified under oath that the NCAA informed her that the Husky Stadium renovation is considered existing construction, and thus is NCAA compliant if the field specifications are 190 (R) x 220 (C) x 200 (L).

[6] *Id.* at 13–14, 19.

Second, Plaintiffs claim that SCSU has fallen out of compliance with the injunction's requirement to "provide substantially equitable athletic participation opportunities." (Pls.' Letter to District Judge at 4–5, Apr. 10, 2024, Docket No. 626.)  But because the Court dissolved the portion of the injunction relating to the allocation of athletic participation opportunities, *see Portz III*, 2022 WL 4095912, at *11, the Court will not reconsider this issue.

## CONCLUSION

SCSU has demonstrated that it is in full compliance with Title IX.  Therefore, the Court will dissolve the permanent injunction, thus ending the Court's jurisdiction over this matter.  The Court expects SCSU to provide fully equitable opportunities and facilities to its Women athletes going forward and importantly, to be fully compliant with Title IX.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Relief from Judgment [Docket No. 612] is **GRANTED**; and

2. The permanent injunction is **DISSOLVED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  August 14, 2024
at Minneapolis, Minnesota.

                                          JOHN R. TUNHEIM
                                      United States District Court